ZEHMER, Judge.
The juvenile appellant in this case was found guilty of committing a burglary and violating the conditions of a previously imposed Community Control Program. As a result, he was sentenced to fifteen years on the burglary charge and was committed to the Department of Health and Rehabilitative Services for an indeterminate period of *967 time, not to exceed his nineteenth birthday or the maximum time allowed by law. On this appeal, T.S.J. seeks reversal of the judgment and sentence, urging three points: (1) legal insufficiency of the circumstantial evidence to prove guilty knowledge and intent; (2) erroneous denial of his repeated motions for continuance to permit appellant to obtain exculpatory testimony from another young boy involved in the alleged burglary; and (3) the trial court’s failure to follow mandatory provisions of Section 39.09, Florida Statutes (1981). We reverse.
T.S.J. is a thirteen year old male who is unable to read and attends special classes for emotionally handicapped children. The record reflects a history of behavioral problems and also indicates that at the time of the alleged burglary, T.S.J. was receiving psychiatric counseling as an outpatient at University Hospital in Jacksonville.
On May 25,1982, T.S.J. was charged with burglarizing a public school, and upon recommendation of a juvenile counselor, the trial court withheld adjudication on that charge and placed T.S.J. in a Community Control Program with specific conditions. Within several months, another petition for delinquency was filed which alleged that T.S.J. had burglarized his cousin’s private residence. He was also charged with violating the conditions of his Community Control Program. T.S.J.’s motion for judgment of acquittal was denied at trial and he was adjudicated guilty on both charges.
Regarding appellant’s first point, we hold that the circumstantial evidence relied upon by the state was legally insufficient to prove the offense charged. T.S.J. was charged with violating Section 810.02, Florida Statutes (1981), which provides, in part:
‘Burglary’ means entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.
There are three essential elements of burglary: (1) knowing entry into a structure; (2) knowledge that such entry is without permission; and (3) criminal intent to commit an offense within such structure.
It is fundamental that in a circumstantial evidence case the evidence must not only prove guilt beyond a reasonable doubt but, also, must be sufficient to exclude every reasonable hypothesis of innocence. Harrison v. State, 104 So.2d 391 (Fla. 1st DCA 1958); D.M. v. State, 394 So.2d 520 (Fla. 3d DCA 1981); J.O. & R.G. v. State, 384 So.2d 966 (Fla. 3d DCA 1980). The circumstances proved in this case fail to exclude a reasonable hypothesis of innocence.
The alleged burglary was supposedly committed in concert with Ricky, who is T.S.J.’s cousin, and Ricky’s girlfriend, Montrae. The burglarized apartment was rented and occupied by Dianne, who is Ricky’s sister and T.S.J.’s cousin, and Earline, Dianne’s part-time roommate. Dianne had given Montrae a place to stay from time to time and testified that it was not unusual for Montrae and Ricky to be at her apartment, where they occasionally stayed overnight. Ricky kept clothes and personal effects in Dianne’s apartment and T.S.J. had visited the apartment on several occasions when Ricky was there.
On the evening of August 26, 1982, Earline and Dianne left the apartment around 6 p.m., locking the back door. The following day, Dianne and Earline returned to the apartment and reported to the police that someone had broken in and taken two cameras, a bottle of wine, a sweater, a wallet, and a container with several pennies. Both Dianne and Earline testified that neither ■T.S.J., Ricky, nor Montrae had permission to enter the apartment on that evening, but there was no testimony that T.S.J. had knowledge of this lack of permission to enter the apartment.
Sgt. Lee of the Nassau County Sheriff’s Department testified that T.S.J., Ricky, and Montrae were picked up and interviewed regarding the burglary. After signing a waiver of his right to an attorney and consenting to give a statement, T.S.J. told Sgt. Lee that Ricky had pushed open the *968 rear door of the apartment and that after the three of them had entered Montrae handed T.S.J. a sweater that she had picked up in the apartment. T.S.J. said that he went to the kitchen, made an ice cream cone, and waited for the others. After the trio left, they went to a gas station and T.S.J. paid for some gas with the pennies taken from the apartment. Sgt. Lee said, however, that T.S.J. denied having taken the pennies. One of the stolen cameras was later seen in Montrae’s possession, and the other stolen property was recovered from an unspecified location in the Callahan area.
At trial, T.S.J. testified in his defense that he knew that Ricky and Montrae had been staying in Dianne’s apartment from time to time and denied knowing that he was not supposed to enter the apartment that evening. He did not think that entering the apartment was a crime because Ricky and Montrae were staying there, and he did not know that the property taken did not belong to Ricky or Montrae. He further testified that he did not see Ricky push the back door open and that he did not know whether the door had been locked. The state, although it had negotiated pleas with Ricky and Montrae, did not call either as a witness to implicate T.S.J. in the commission of the burglary. In fact, T.S.J. attempted to call Ricky to testify in his defense, expecting him to give exculpatory testimony, but Ricky declined to answer questions, asserting his Fifth Amendment right against self-incrimination.
There was no evidence establishing that T.S.J. knew that his cousin Ricky was not authorized to enter his sister’s apartment on this particular evening, that T.S.J. knew that the property removed by Ricky and Montrae did not belong to them, that any of the stolen property was found in T.S.J.⅛ personal possession, or that T.S.J. knowingly entered the apartment without permission and committed or even intended to commit an offense of any kind therein. We agree with appellant that it is reasonable to infer that T.S.J. entered his cousin’s apartment in the belief that her brother Ricky and his girlfriend were entitled to do so on this occasion as they had in the past, to pick up their belongings, and that T.S.J. did so without any knowledge of actual or intended criminal wrongdoing. We do not agree with the state that this hypothesis is unreasonable and must be discarded. The evidence was legally insufficient to support the conviction of burglary. See, D.M. v. State, 394 So.2d 520 (Fla. 3d DCA 1981); Harrison v. State, 104 So.2d 391, 394-95 (Fla. 1st DCA 1958).
In view of our disposition of appellant’s first point, it is not necessary to reach the other two points on appeal. Nevertheless, to avoid any error with respect to further proceedings on the charged violations, we feel obligated to point out that strict compliance with the provisions of Section 39.09(3) is mandatory and failure to comply will result in reversible error. W.Y. v. State, 414 So.2d 659 (Fla. 1st DCA 1982); see also, D.C. v. State, 436 So.2d 203 (Fla. 1st DCA 1983); Rhoden v. State, 421 So.2d 780 (Fla. 2d DCA 1982). Similarly, Section 39.11 must be read in pari materia with Section 39.09, and failure to strictly comply with the requirements of that section may also result in reversible error.
We note that T.S.J. admitted “technical violations” of the conditions of his Community Control Program. Because his conviction of burglary of a dwelling must be reversed, however, we cannot predict with certainty what adjudication or sentence the trial court would have imposed upon T.S.J. for the Community Control violations standing alone. Therefore, the judgment must be reversed, the sentence vacated, and the case remanded for further proceedings on the petition charging violation of the Community Control.
The adjudication of guilt is REVERSED, the sentence of commitment to the Department of Health and Rehabilitative Services is VACATED, and the case is REMANDED for further proceedings consistent herewith.
SHIVERS, J., concurs.
MILLS, J., concurs in part and dissents in part.